UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| KIMBERLY AKER and CARMEN ROJO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br>v.<br><br>MIDLAND CREDIT MANAGEMENT, INC. and MIDLAND FUNDING, LLC,<br><br>Defendants. | Case No.: 13-cv-761<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692.

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337 and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Kimberly Aker ("Aker") is an individual who resides in the Eastern District of Wisconsin (Kenosha County).

4. Plaintiff Carmen Rojo ("Rojo") is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

5. Plaintiffs are "consumers" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendants sought to collect from them, alleged personal credit card debts, that were allegedly incurred for personal, family or household purposes.

6. Defendant Midland Credit Management, Inc. ("MCM") is a debt collection agency with its principal offices in California. MCM's website lists its address as 8875 Aero Drive, Suite 200, San Diego, CA 92123.

7. MCM is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. MCM is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. MCM is a debt collector as defined in 15 U.S.C. § 1692a.

9. Defendant Midland Funding LLC, ("Midland Funding") is a Delaware corporation with its principal place of business located in California. The Wisconsin Department of Financial Institutions lists Midland Funding's address as 3111 Camino Del Rio North, San Diego, CA 92108. Midland Funding's actual address may be MCM's address.

10. Midland Funding is engaged in the business of a collection agency, in that it purchases and receives assignment of consumer debts that are in default at the time Midland Funding acquires them. MCM uses the mails and telephone to collect consumer debts originally owed to others and currently held by Midland Funding. Midland Funding, directly or indirectly, is a debt collector under this arrangement. 15 U.S.C. § 1692a(6).

## FACTS

### Letters to Aker

11. On or about July 6, 2012, MCM mailed a debt collection letter to Aker regarding an alleged debt owned by Midland Funding. A copy of this letter is attached to this complaint as Exhibit A.

12. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

2

13. Upon information and belief, Exhibit A is a form debt collection letter used by Defendants to attempt to collect alleged debts.

14. Text on Exhibit A identifies the "Current Owner" of the account as "Midland Funding LLC" and the "Original Creditor" as "Citibank (South Dakota), N.A."

15. However, Exhibit A also contains the following text:

> Your past due balance of $825.21 with Citibank (South Dakota), N.A. is being reported to the credit reporting bureaus and remains a negative item on your credit report.

16. On or about August 16, 2012, MCM mailed a debt collection letter to Aker regarding the same alleged debt identified in Exhibit A, except for the addition of interest. A copy of this letter is attached to this complaint as Exhibit B.

17. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

18. Upon information and belief, Exhibit B is a form debt collection letter used by Defendants to attempt to collect alleged debts.

19. Exhibit B contains the following text:

> Your past due balance of $829.83 with Citibank (South Dakota), N.A. is being reported to the credit reporting bureaus and remains a negative item on your credit report.

20. Exhibit A also purports to offer to settle Plaintiff's debts for 60 percent (as a lump sum payment) and 80 percent (with six payments over time), and identifies "08-05-2012" as the "expiration date" of the settlement offer.

21. Exhibit A also includes the following language: "Your payment will be reduced to $660.17 if you make 6 monthly payments of $110.02 by 08-05-2012. That's 20% off your current balance due.

3

22. Exhibit B includes the same settlement language identified in paragraphs 20 and 21, with an "expiration date" of "09-15-2012."

23. Exhibit B also includes the same statement about making 6 monthly payments as Exhibit A by the "expiration date," which is one month after the date on the letter.

24. Defendants mailed two additional letters to Plaintiff Aker regarding the same alleged debt and making similar "limited time settlement offers" on or around January 24, 2013 and March 8, 2013. Copies of these two letters are attached to this complaint as Exhibits C and D.

25. Exhibit C also purports to offer Plaintiff Aker two options to settle the alleged debt for less than the alleged balance:

| | |
|---|---|
| **Option 1: 40% OFF** <br> Payment Due Date: 02-23-2013 | You pay only <br> **$508.52** |
| **Option 2: 20% OFF** <br> First Payment Due Date: 02-23-2013 | 6 Monthly Payments of Only <br> **$113.00** |

26. Exhibit C also states:

Offer expiration date: 02-23-2013

27. Exhibit C also states at the bottom in the "payment coupon":

**Payment Due Date:** 02-23-2013

28. Exhibit D includes the same settlement language identified in paragraphs 25-27 with slightly different numbers due to the addition of interest to the alleged debt, and an "expiration date" of 04-07-2013.

**Violations of the FDCPA**

*Misstating the name of the creditor*

4

29. <u>Exhibits A and B</u> are false, misleading, contradictory and confusing to the unsophisticated consumer, in that they identify Midland Funding as the "creditor" in one place, but also identify the original creditor as the actual creditor, specifically stating that the alleged balance is "with [the original creditor]," in another place on the same letter.

30. The statement: "Your past due balance of $[amount] with [the original creditor] is being reported to the credit reporting bureaus and remains a negative item on your credit report," is false. In fact, the alleged debts are no longer "with" the original creditor.

31. The unsophisticated consumer would be confused by the contradictory statements and implications as to who the actual creditor is.

32. MCM's misrepresentation and confusion of the current creditor's identity is a material misstatement.

33. The unsophisticated consumer receiving <u>Exhibits A and B</u> would be unsure whether Citibank (South Dakota), N.A. or Midland Funding was the actual creditor. The consumer would undoubtedly be more familiar with Citibank than Midland Funding.

34. Further, if a consumer sent a check to Citibank (South Dakota), N.A., or to whatever entity MCM's letter says the account is "with," the payment would not satisfy the alleged debt owed to Midland Funding. Midland Funding would be within its rights to continue collection efforts or even file a lawsuit to collect the entire balance.

35. Furthermore, the consumer may be barred from recovering an erroneous payment to the erroneous party by the voluntary payment doctrine. Even if the voluntary payment doctrine does not apply or would not be enforced, the logistical challenge of obtaining a refund would discourage consumers from attempting to recover their erroneous payment.

*False statements that the settlement offer expires*

5

Case 2:13-cv-00761   Filed 07/03/13   Page 5 of 16   Document 1

36. <u>Exhibits A and B</u> also falsely state that the settlement offer expires on a specific date.

37. Upon information and belief, Defendants set the supposed "expiration" or "due by" date on letters in the form of <u>Exhibits A-D</u> at approximately 30 days after the "mailing date" on the letter.

38. In fact, the purported settlement offers never actually expire.

39. Upon information and belief, Midland Funding or a related entity owns the alleged account. "Bad debt buyers" such as Midland Funding and its related collection agency MCM, will settle consumers' accounts for 60% of the amount owed, or less, at any time.

40. Statements such as a settlement offer "is a one time offer," or that the offer is a "limited time offer," or that the offer expires on a specific date, or that payments received after that date would not be eligible for that settlement offer, are false and misleading because the same offer is, upon information and belief, available at any time.

41. Such false statements are material false statements, as they impart in the unsophisticated consumer, a false belief that he or she must hurry to take advantage of a limited-time opportunity, when in reality, there is no such time limit. This is especially true when, as here, the debt collector or a related entity has purchased the alleged debt and does not need permission from a third party creditor to accept any amount in settlement.

42. The Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following language: "We are not obligated to renew this offer." The word

6

> "obligated" is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775-76 (7th Cir. 2007).

43. Defendants did not use the safe harbor language.

44. Upon information and belief, the "deadline" to respond to the settlement offers is a sham. There is no actual deadline. The sole purpose of the purported deadline is to impart in the consumer a false sense of urgency.

### *Confusing due date statement*

45. The language on <u>Exhibits A</u>: "Your payment will be reduced to $660.17 if you make 6 monthly payments of $110.02 by 08-05-2012," is confusing to the unsophisticated consumer.

46. According to the date on the letter itself, <u>Exhibit A</u> was sent to Plaintiff Aker on or around July 6, 2012. It is not possible to make six monthly payments in the one-month period between July 6, 2012 and August 5, 2012.

47. Likewise, it is also not possible to make six monthly payments in the one-month period between the sending of <u>Exhibit B</u>, on or around August 16, 2012, and the "expiration date" of September 15, 2012.

48. Nothing in <u>Exhibits A or B</u> explains the impossible time periods. The letters state that the offers expire on the expiration date, and that the six "monthly" payments must be received by that date.

### **Letters to Rojo**

49. On or about August 16, 2013, MCM mailed a debt collection letter to Plaintiff Rojo regarding an alleged debt owned by Midland Funding. A copy of this letter is attached to this complaint as <u>Exhibit E</u>.

7

50. Upon information and belief, Exhibit E is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

51. Upon information and belief, Exhibit E is a form debt collection letter used by Defendants to attempt to collect alleged debts.

52. Text on Exhibit E identifies the "Current Owner" of the account as "Midland Funding LLC" and the "Original Creditor" as "Verizon Wireless."

53. However, Exhibit E also contains the following text:

> Your past due balance of $247.15 with Verizon Wireless is being reported to the credit reporting bureaus and remains a negative item on your credit report.

54. Exhibit E also purports to offer Plaintiff Rojo a chance to settle the alleged debt for less than the alleged balance:

> **If we receive $148.29 by 09-05-2012, we will consider your balance paid in full!**

(emphasis in original).

55. Exhibit E also identifies "09-15-2012" as the expiration date in three additional places on the letter.

56. Defendants mailed two additional letters to Plaintiff Rojo regarding the same alleged debt and making similar "limited time settlement offers" of 60% of the "Current Balance" on or around February 2, 2013 and March 15, 2013. Copies of these two letters are attached to this complaint as Exhibits F and G.

57. Defendants also mailed Exhibits E, F and G to Plaintiff Rojo in envelopes that included extraneous text: "First Class", "Time Sensitive Documents", and "IMPORTANT NOTICE: TIME SENSITIVE". A copy of the envelopes, collectively, is attached as Exhibit H.

## Violations of the FDCPA

### *Misstating the name of the creditor*

58. Exhibit E is false, misleading, contradictory and confusing to the unsophisticated consumer, in that it identifies Midland Funding as the "creditor" in one place, but also identifies someone else as the actual creditor, specifically stating that the alleged balance is "with Verizon Wireless" in another place on the same letter.

59. The statement: "Your past due balance of $[amount] with [the original creditor] is being reported to the credit reporting bureaus and remains a negative item on your credit report," is false. In fact, the alleged debts are no longer "with" the original creditor.

60. The unsophisticated consumer would be confused by the contradictory statements and implications as to who the actual creditor is.

61. MCM's misrepresentation and confusion of the current creditor's identity is a material misstatement.

62. The unsophisticated consumer receiving Exhibit E would be unsure whether Verizon Wireless or Midland Funding was the actual creditor. The consumer would undoubtedly be more familiar with Verizon than Midland Funding.

63. Further, if a consumer sent a check to Verizon Wireless, or to whatever entity MCM's letter says the account is "with," the payment would not satisfy the alleged debt owed to Midland Funding. Midland Funding would be within its rights to continue collection efforts or even file a lawsuit to collect the entire balance.

64. Furthermore, the consumer may be barred from recovering an erroneous payment to the erroneous party by the voluntary payment doctrine. Even if the voluntary payment doctrine does not apply or would not be enforced, the logistical challenge of obtaining a refund would discourage consumers from attempting to recover their erroneous payment.

### *False statements that the settlement offer expires*

9

65. <u>Exhibits E, F and G</u> falsely state that the settlement offers expire on a specific date.

66. Upon information and belief, Defendants set the supposed "expiration" or "due by" date on letters in the form of <u>Exhibits E-G</u> at approximately 30 days after the "mailing date" on the letter.

67. In fact, the purported settlement offer never actually expires.

68. Upon information and belief, Midland Funding or a related entity owns the alleged account. "Bad debt buyers" such as Midland Funding and its related collection agency MCM, will settle consumers' accounts for 60% the amount owed, or less, at any time.

69. Statements such as a settlement offer "is a one time offer," or that the offer is a "limited time offer," or that the offer expires on a specific date, or that payments received after that date would not be eligible for that settlement offer, are false and misleading because the same offer is, upon information and belief, available at any time.

70. Such false statements are material false statements, as they impart in the unsophisticated consumer, a false belief that he or she must hurry to take advantage of a limited-time opportunity, when in reality, there is no such time limit. This is especially true when, as here, the debt collector or a related entity has purchased the alleged debt and does not need permission from a third party creditor to accept any amount in settlement.

71. Defendants did not use the applicable safe harbor language. *Evory*, 505 F.3d at 775-76.

72. Upon information and belief, the "deadline" to respond to the settlement offers in each of <u>Exhibits E-G</u> is a sham. There is no actual deadline. The sole purpose of the purported deadline is to impart in the consumer a false sense of urgency.

***Extraneous text on the envelopes***

73. The Fair Debt Collection Practices Act prohibits unfair debt collection practices. 15 U.S.C. § 1692f.

74. This prohibition includes "(8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business."

75. The envelopes Defendants sent to Plaintiff Rojo included extraneous text. *See* Exhibit H.

76. The extraneous text is not benign. *Peter v. GC Services L.P.*, 310 F.3d 344, 351 (5th Cir. 2002); *Goswami v. American Collections Enterprise, Inc.*, 395 F.3d 225, 228 (5th Cir. 2004) (Smith, J. *dissenting*) ("[an exemption for "benign" markings on envelopes] find[s] no basis in any reported case, or in the statute, or in any regulations, legislative history, or agency interpretation or commentary"). Its purpose is to draw attention to the debt collection letter and to impart a false sense of urgency in the alleged debtor.

77. Further, it is simple for a debt collector to comply with 15 U.S.C. § 1692f(8) – do not print extraneous information on the envelopes.

## COUNT I—FDCPA

78. Plaintiffs incorporate the above numbered paragraphs by reference.

79. This claim is brought on behalf of both Plaintiffs and on behalf of all others similarly situated.

80. 15 U.S.C. § 1692e states: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

81. 15 U.S.C. § 1692e(2)(a) specifically prohibits debt collectors from making false representations about "the character, amount, or legal status of any debt."

11

82. <u>Exhibits A, B and E</u> contain false, misleading and contradictory statements of who the actual, current creditor is.

83. The statement: "Your past due balance of $[amount] with [the original creditor] is being reported to the credit reporting bureaus and remains a negative item on your credit report," is objectively false. In fact, the alleged debts are no longer "with" the original creditor.

84. The unsophisticated consumer would be confused as to whether the alleged debt was owed to Midland Funding or to Citibank (South Dakota), N.A. (<u>Exhibits A-B</u>). The misstatement is material, in that an erroneous payment to the original creditor would not satisfy the alleged debt that is allegedly owed to Midland Funding.

85. The defendant has therefore violated 15 U.S.C. §§ 1692e and 1692e(2)(a), by making false, deceptive or misleading representations.

## COUNT II – FDCPA

86. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

87. This claim is brought on behalf of both Plaintiffs and on behalf of all others similarly situated.

88. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

89. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

90. <u>Exhibits A-G</u> include false statements to the effect that the settlement offer expires on a specific date.

91. Upon information and belief, Midland Funding or a related entity owns the alleged debts identified in <u>Exhibits A-G</u>.

12

92. Upon information and belief, Defendants would settle Plaintiffs' and class members' debts at the offered discount and possibly for less at any time, regardless of the supposed deadline.

93. Defendants violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692f.

## COUNT III – FDCPA

94. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

95. This claim is brought on behalf of Plaintiff Aker and on behalf of all others similarly situated.

96. The language on <u>Exhibits A and B</u>: "Your payment will be reduced to [80% of the "current balance"] if you make 6 monthly payments of $[amount] by [the expiration date]," is confusing to the unsophisticated consumer.

97. It is not possible to make six "monthly" payments in a 30-day period.

98. The unsophisticated consumer would have no idea what Defendants meant by the language in its letter.

99. Defendants violated 15 U.S.C. §§ 1692e and 1692f.

## COUNT IV – FDCPA

100. Plaintiffs incorporate by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

101. This claim is brought on behalf of Plaintiff Aker and on behalf of all others similarly situated.

102. 15 U.S.C. § 1692e(8) prohibits a debt collector from:

> Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or

by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

103. The envelopes Defendants sent to Plaintiff Rojo, <u>Exhibit H</u>, included extraneous text.

104. The only purpose of the extraneous text on <u>Exhibit H</u> is to draw attention to the debt collection letter and to impart a false sense of urgency in the alleged debtor.

105. Defendants violated 15 U.S.C. §§ 1692e(8).

## CLASS ALLEGATIONS

106. Both Plaintiffs bring Counts I and II on behalf of a class, consisting of (a) all natural persons in the state of Wisconsin (b) who were sent a collection letter in the form of <u>Exhibit A, B, C, D, E, F or G</u>, (c) seeking to collect a debt for personal, family or household purposes, (d) on or after July 3, 2012, (e) that was not returned by the postal service.

107. Plaintiff Aker brings Count III on behalf of a class, consisting of (a) all natural persons in the state of Wisconsin (b) who were sent a collection letter by MCM, (c) seeking to collect a debt for personal, family or household purposes that was allegedly owed to Midland Funding, (d) which contain language offering to settle the alleged debt for 80 percent of the amount owed under the condition that six monthly payments are made by a deadline that is less than two months after the mailing date of the letter, (e) on or after July 3, 2012, (f) that was not returned by the postal service.

108. Plaintiff Rojo brings Count IV on behalf of a class, consisting of (a) all natural persons in the state of Wisconsin (b) who were sent a collection letter in any of the envelopes identified in <u>Exhibit H</u>, (c) seeking to collect a debt for personal, family or household purposes that was allegedly owed to Midland Funding, (d) on or after July 3, 2012, (e) that was not returned by the postal service.

109. The classes are so numerous that joinder is impracticable. On information and belief, there are more than 50 members of each class.

110. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the defendant complied with 15 U.S.C. §§ 1692e and 1692f.

111. Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

112. Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

113. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

114. Plaintiffs demand trial by jury.

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of Plaintiffs and the respective Classes, and against Defendants for:

    a.    actual damages;

    b.    statutory damages;

    c.    attorney's fees, litigation expenses and costs of suit; and

    d.    such other or further relief as the Court deems proper.

**ADEMI & O'REILLY, LLP**

By:   /s/ John D. Blythin
       Shpetim Ademi (SBN 1026973)
       David J. Syrios (SBN 1045779)

John D. Blythin (SBN 1046105)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
dsyrios@ademilaw.com
jblythin@ademilaw.com